UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICAH A. RANDALL, <br><br> Plaintiff, <br><br> v. <br><br> PAMELA ANDERSON TAYLOR, et al., <br><br> Defendants. | Case No. 3:18-cv-01195 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

To:   The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

In October 2017, pro se Plaintiff Micah A. Randall learned that his financial records had been subpoenaed by lawyers handling the divorce of his former business partner Ronna Ueber, from her then-husband, James Ueber. Suspecting foul play, Randall sued Mr. Ueber and his legal team, Defendants Pamela Anderson Taylor, Brenton Hall Lankford, Gregory Smith, and Ann Ralls Niewold (the attorney defendants). (Doc. No. 1.) Randall asserted claims under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., 42 U.S.C. § 1983, and several other federal and state laws seeking various forms of equitable relief and damages. (*Id.*) The defendants moved to dismiss the complaint (Doc. No. 11) for failure to state a claim and for lack of jurisdiction. The Court granted that motion and dismissed the action in full. (Doc. No. 25.)

Randall then moved to alter or amend the Court's order of dismissal. (Doc. No. 27.) The Court granted Randall's motion and allowed Randall to file an amended complaint incorporating additional allegations to support his FCRA claims. (Doc. No. 29.) Randall did so, filing an amended complaint and ten exhibits. (Doc. No. 30.) The defendants now move to dismiss the

amended complaint. (Doc. No. 33.) For the reasons that follow, the Magistrate Judge will recommend that the motion to dismiss (Doc. No. 33) be granted.

I. Background

   A. Factual History[1]

The factual setting of Randall's complaint is messy and, for the most part, not legally relevant. In September 2015, Randall moved from Oregon to Franklin, Tennessee, to begin work as an independent contractor providing construction and transportation services for Ms. Ueber's company, Coastal, Inc. (Doc. Nos. 30, 30-7.) Soon thereafter, Ms. Ueber filed for divorce and warned Randall of Mr. Ueber's propensity for "vengeful retaliatory acts and harassment . . . against those affiliated with her, including friends and business associates." (Doc. No. 30, PageID# 419.) Mr. Ueber hired private investigators to "collect a variety of pieces of data and information" about Randall and his business partner, Richard Alexander. (*Id.* at PageID# 435; Doc. No. 30-6.)

After Ms. Ueber received some of the information about Alexander, she terminated his contract and he moved back to Oregon. (Doc. No. 30.) Alexander's sudden departure caused Randall "great financial and emotional distress" because Randall was unable to complete several projects for Coastal without Alexander's assistance and Randall was left paying for rent and utilities at their previously shared apartment. (*Id.* at PageID# 421.) In October 2016, Randall moved back to Oregon but continued to work on projects for Coastal. (Doc. No. 30.)

The Uebers' divorce proceedings moved forward in Tennessee state court and Mr. Ueber's attorneys attempted to subpoena Randall to be deposed. (*Id.*) Randall was first served with the

---

[1]   The following factual history draws primarily from Randall's amended complaint and the exhibits it incorporates by reference. (Doc. Nos. 30–30-10). Randall's allegations are taken as true for the purpose of ruling on the defendants' motion to dismiss.

subpoena by the investigators while visiting Ms. Ueber in Tennessee, but Randall contested the propriety of service and did not appear for the deposition. (*Id.*; Doc. No. 30-6.) The attorney defendants exchanged emails with the investigators regarding a second attempt to serve Randall. (*Id.*) These emails contain references to Randall's billing address, social media accounts, cell phone number, vehicle registration, banking information, credit card information, and utility bills. (*Id.*) The investigators again served Randall with a deposition subpoena, this time at the Nashville International Airport. (Doc. No. 30.) Randall again claimed that he was not properly served and again did not appear. (*Id.*)

Mr. Ueber filed a motion to issue a body attachment for Randall in the divorce proceedings, arguing that Randall had failed to appear at either deposition despite having been properly served with valid subpoenas. (Doc. No. 30-6.) After the Williamson County Chancery Court ordered Randall to appear for a show-cause hearing, Randall requested copies of all filings in the Uebers' divorce proceedings that mentioned him. (Doc. Nos. 30, 30-6.) Because the case was sealed, the Clerk's Office denied Randall's request. (Doc. No. 30.) Randall failed to appear for the show-cause hearing, and the Court issued a body attachment order for Randall, setting bond at $100,000.00 and holding him in contempt. (Doc. No. 30-6.)

Randall then began to investigate whether his financial information had been subpoenaed in the Uebers' divorce. (Doc. No. 30.) He learned that the attorney defendants had subpoenaed Bank of America, Prosper Funding LLC, and Ally Bank demanding copies of account statements and credit applications relating to him, Ms. Ueber, Alexander, and Coastal, Inc. (Doc. Nos. 30-2–30-4.) Randall maintains that he was never "properly served [with] these three financial subpoenas . . . ." (Doc. No. 30, PageID# 428.)

3

Randall filed a formal complaint with the Tennessee Board of Professional Responsibility (TNBPR) against Lankford regarding the "unlawful subpoena issued to Bank of America." (Doc. No. 30, PageID# 425.) Lankford responded and confirmed that, in the course of representing Mr. Ueber, he and the other attorney defendants had collected information regarding Randall's address, banking, credit cards, utilities, vehicle registration, and social media presence. (Doc. Nos. 30, 30-6.) That matter remains pending. (Doc. No. 30.) Randall also filed a TNBPR complaint against Taylor, which resulted in a public censure for issuing a subpoena in noncompliance with applicable law. (Doc. Nos. 30, 30-1.)

Randall now brings claims against Mr. Ueber and the attorney defendants under the FCRA alleging that they violated its rules governing consumer reporting agencies (CRAs) and users of consumer reports. (Doc. No. 30.)

## II.     Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Randall proceeds pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.     Analysis**

Congress passed the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA advances these goals by allowing a consumer to bring a civil action for "willful or negligent violations of the responsibilities enumerated by the [FCRA]." *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004) (citing 15 U.S.C. §§ 1681n, 1681o). The FCRA creates a private right of action against "'three types of entities: (1) consumer reporting agencies[;] (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies.'" *Id.* (quoting *Carney v. Experian Info. Sols., Inc.*, 57 F.Supp.2d 496, 500 (W.D. Tenn. 1999)).

The FCRA defines a consumer reporting agency as

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

5

15 U.S.C. § 1681a(f).

> A consumer report is
>
> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

*Id.* § 1681a(d)(1). "Typically, consumer reporting agencies sell consumer reports to lenders, credit card companies, insurers, and employers for credit, insurance, and employment decisions." *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 101 (2d Cir. 2019).

Randall argues that the defendants, individually and collectively, fall within the definition of a CRA and are thus liable for violations of the FCRA. (Doc. No. 30.) To support this argument, Randall points to the consumer information that the defendants collected through subpoenas of financial institutions. (*Id.*) Specifically, Randall states that the defendants collected information including his "home and work address, phone numbers, text messages, email address and emails, . . . employment contracts, social security number, . . . detailed banking and financial records," and other similar personal information. (*Id.* at PageID# 404.) Randall then argues that the defendants "regularly aggregated, analyzed, and reported" this "[c]onsumer information" and thus created "[c]onsumer [r]eports." (*Id.* at PageID# 406.) The "[c]onsumer [r]eports" were then shared with numerous "third parties[,]" including "[c]o-workers, employers, clients, attorneys, [and] private investigators . . . ." (*Id.*) Randall alleges that the defendants unlawfully used the consumer reports

"for the purpose of harassing persons, harming persons, and/or achieving certain desirable outcomes for themselves and/or their clients." (*Id*. at PageID# 407.)

The defendants argue that Randall has not adequately alleged that they meet the FCRA's definition of a CRA or that the financial information they obtained amounted to a consumer report. (Doc. Nos. 34, 37.) The defendants claim they "were at no point tasked with determining [Randall's] creditworthiness" and that they never transmitted "consumer reports" to third parties. (Doc. No. 34, PageID# 535.) Instead, they argue that the subpoenas issued to the financial institutions for Randall's financial information were used solely in "regard to the Ueber's Divorce Case and the division of that marital estate." (*Id.*) In response, Randall also argues that the defendants collected his consumer information "for the purpose of serving as a factor in establishing [his] eligibility for . . . (2) employment purposes," directly quoting 15 U.S.C. § 1681a(d). (Doc. No. 36, PageID# 544.)

"[T]he FCRA is to be liberally construed in favor of the consumer[.]" *Jones v. Federated Fin. Rsrv. Corp.*, 144 F.3d 961, 964 (6th Cir. 1998). However, even when Randall's allegations are liberally construed, they are insufficient to render his FCRA claims plausible.

### A. CRA Liability

To hold the defendants liable for violating the FCRA's rules governing CRAs, Randall must first allege sufficient facts that each named defendant acted as a CRA. *See Tierney v. Advoc. Health & Hosp. Corp.*, 797 F. 3d 449, 451 (7th Cir. 2015) (holding that threshold question in ruling on motion to dismiss CRA liability claim was whether plaintiff had plausibly pleaded that defendant was a CRA); *Daniels v. Charter One Bank*, 39 F. App'x 223, 225 (6th Cir. 2002) (concluding that plaintiff had failed to state a claim for CRA liability where plaintiff had not adequately alleged that defendant was a CRA); *DiGianni v. Stern's*, 26 F.3d 346, 348–49 (2d Cir. 1994) (same); *Walker v. Fabrizio & Brook, P.C.*, No. 17-11034, 2017 WL 5010781, at *3 (E.D.

Mich. Nov. 2, 2017) (same); *Carney*, 57 F. Supp. 2d at 501 (same); *Lamdin v. Aerotek Commercial Staffing*, No. 3:10-CV-280, 2010 WL 3896154, at *3 (E.D. Tenn. Sept. 30, 2010) (same). He simply has not done so.

Critically, to find that an entity meets the definition of a CRA, that entity must regularly assemble or evaluate consumer information "for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f); *see also Kidd*, 925 F.3d at 104 (holding that "the meaning of 'for the purpose of' in § 1681a(f) is therefore plain: A 'consumer reporting agency' is an entity that intends the information it furnishes to constitute a 'consumer report'"); *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1027 (9th Cir. 2019) (holding that, "[b]y its plain meaning, . . . [§ 1681a(f) refers]to an entity that assembles or evaluates consumer information with the intent to provide a consumer report to third parties"). Assembling and evaluating consumer information "'implies a function which involves more than receipt and retransmission of information identifying a particular debt.'" *Carney*, 57 F. Supp. 2d at 501 (quoting *DiGianni*, 26 F.3d at 349). The defendants concede that their work investigating and conducting discovery "may at times involve assessment of financial records for purposes of administration and dissolution of marital estates," but they deny assembling or evaluating "consumer credit for purposes of furnishing reports to third parties." (Doc. No. 33, PageID# 528.)

Most courts rely on the FCRA statutory definition when considering whether the plaintiff has pleaded adequate facts that collected consumer information amounts to a consumer report. *See Hall v. Phenix Investigations, Inc.*, 642 F. App'x 402, 404 (5th Cir. 2016); *Skiles v. Tesla, Inc.*, 440 F. Supp. 3d 1012, 1015 (N.D. Cal. 2020), *see also Bickley v. Dish Network, LLC*, 751 F.3d 724, 729 n.4 (6th Cir. 2014) (holding that courts must "look at the contents of the reports themselves to assess whether they reach the threshold established in 15 U.S.C. §1681a(d)(1)" to

be considered a consumer report); *In re Allstate Ins. Co. Underwriting & Rating Practices Litig.*, 917 F. Supp. 2d 740, 745 (M.D. Tenn. 2008) (relying on the statutory definition of a consumer report to determine whether a consumer report was obtained for a permissible purpose); *Walker*, 2017 WL 5010781, at *4 (finding that the Plaintiffs had not pleaded "sufficient facts to support" inference that defendant acted as a CRA and therefore the information the defendant collected could not be a consumer report). Accordingly, Randall must plausibly allege that the information the defendants collected was "used or expected to be used or collected . . . for . . ." "employment purposes" or one of the other enumerated purposes under §1681a(d)(1). 15 U.S.C. § 1681a(d)(1), (d)(1)(B).

Randall has not done so, and therefore he has not adequately pleaded the existence of a consumer report. *See* 15 U.S.C. § 1681a(d)(1). In his amended complaint, Randall alleges that the defendants collected his consumer information and communicated it "for the purpose of harassing persons, harming persons, and/or achieving certain desirable outcomes for themselves and/or their clients." (Doc. No. 30, PageID# 406–07.) This is not an enumerated purpose under 15 U.S.C. § 1681a(d)(1).

Randall argues in his sur-reply that defendants used "[c]onsumer [r]eports and [i]nvestigative [c]onsumer [r]eports to cause substantial financial and emotional injury to [him] in terms of . . . [f]orcing Ms. Ueber . . . to not employ [him]" (Doc. No. 39, PageID# 583), drawing a tenuous connection between communication of his consumer information and "employment purposes" under 15 U.S.C. § 1681a(d)(1)(B).[2] But that argument is at odds with the allegation in

---

[2] An investigative consumer report "means a consumer report or portion thereof in which information on a consumer's character . . . is obtained through personal interviews . . . ." 15 U.S.C. § 1681a(e); *see also Cheatham v. McCormick*, No. 95-6558, 1996 WL 662887, at *2 (6th Cir. Nov. 12, 1996) ("An investigative consumer report is a consumer report containing information obtained through personal interviews.").

the amended complaint that he continued to work for Ms. Ueber even after he returned to Oregon, completing "mostly out-of-state moving jobs for COASTAL . . . ." (Doc. No. 30, PageID# 421.) Moreover, a report is used for employment purposes under the FCRA when it is "used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h); *see also Johnson v. Sherwin-Williams Co.*, 152 F. Supp. 3d 1021, 1025 (N.D. Ohio 2015) (quoting 15 U.S.C. § 1681a(h)). Randall does not allege facts consistent with that purpose, only that the collected consumer information caused him "great financial and emotional distress." (Doc. No. 30, PageID# 421); *cf. Philpot v. Microbilt Corp.*, No. 3:16-CV-00382, 2016 WL 7395289, at *2 (W.D. Ky. Dec. 21, 2016) (concluding that plaintiff had adequately alleged that defendant was a CRA where it furnished a background check report to plaintiff's prospective employer, which then denied plaintiff's application for employment based on the report); *Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557 (E.D. Ky. 2006) (finding that a background check performed to determine plaintiff's eligibility for employment was a consumer report).

Because Randall alleges that the defendants collected his personal information for the purpose of harming him and advancing Mr. Ueber's position in his divorce, Randall has failed to plausibly allege either that the information the defendants collected meets the definition of a consumer report or that any of the defendants acted as a CRA. Other courts have reached similar conclusions when presented with FCRA claims asserting that lawyers or law firms acted as CRAs. *See Mattiaccio v. DHA Group, Inc.*, 21 F.Supp.3d 15, 25 (D.D.C. 2014) (finding that "attorney with a clear fiduciary relationship to the employer-client at whose behest the attorney-defendant conducted a background investigation" of plaintiff was "an attorney-agent" of employer "and not a consumer reporting agency"); *Wright v. Zabarkes*, No. 07 Civ. 7913, 2008 WL 872296, at *2–3

(S.D.N.Y. Apr. 2, 2008) (finding that plaintiff had failed to plausibly allege that law firm was a CRA where neither firm's rent demand letter sent to plaintiff nor its non-payment file constituted a consumer report), *aff'd*, 347 F. App'x 670 (2d Cir. 2009); *Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1333 (D. Utah 1997) (finding that law firm that had "[m]erely furnished information about a particular debt" was not a CRA).[3] Accordingly, Randall's claims under § 1681e(a), § 1681e(b), § 1681e(d), and § 1681i(a), which only address CRAs, must fail.

### B. User Liability

Finally, Randall asserts that Defendants violated § 1681b, which "lists the purposes for which a party may obtain a consumer report[.]" *Duncan v. Handmaker*, 149 F.3d 424, 426 (6th Cir. 1998). Specifically, Randall points to § 1681b(f), which provides that

> [a] person shall not use or obtain a consumer report for any purpose unless—
>
> > (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> >
> > (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f).

To survive the defendants' motion to dismiss this claim, Randall must allege that "'(i) there was a consumer report; (ii) the defendants used or obtained it[;] (iii) the defendants did so without a permissible statutory purpose[;] and (iv) the defendants acted with the specified culpable mental

---

[3] Randall cites *Benjamin v. Coker*, No CV-06-1207, 2006 WL 3741934 (D. Ariz. Nov. 3, 2006), to support his position that the attorney defendants qualify as CRAs. (Doc. No. 30.) That case is distinguishable. Although the court in *Benjamin* concluded that the plaintiff had adequately alleged that the attorney defendant acted as a CRA, the defendants rightly emphasize that the court reached that conclusion in interpreting the definition of a CRA under Arizona, not federal, law. *See id.* at *4. Further, in contrast to this case, the parties in *Benjamin* did not dispute the existence of a consumer report. *See id.* at *1 (explaining that plaintiff received a copy of his consumer report from Experian on May 18, 2005).

state.'" *King v. Equable Ascent Fin., LLC*, No. 1:12-CV-443, 2013 WL 2474377, at *2 (M.D.N.C. June 10, 2013) (citation omitted); *see also Bickley*, 751 F.3d at 724 (holding that a plaintiff must establish the same elements to prevail at summary judgment). Randall asserts that the defendants "unlawfully obtained his bank records without his knowledge or permission for purposes not approved by [him]." (Doc. No. 30, PageID# 437.) He further alleges that the "[c]onsumer [r]eports" obtained by the defendants were "used to stalk, harass[,] and defame" him. (*Id.*)

Randall's claim that defendants improperly used his consumer reports in violation of 15 U.S.C. § 1681b(f) fails because, as already explained, he has not adequately alleged the existence of a consumer report. This theory of liability is particularly implausible, and somewhat confusing, given Randall's insistence that the defendants are themselves the CRAs that furnished his personal, financial information to other third parties for use. *See Kidd*, 925 F.3d at 101 (explaining that CRAs and users are typically separate entities).[4]

## IV. Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the defendants' motion to dismiss (Doc. No. 33) be GRANTED and that Randall's FCRA claims be DISMISSED WITH PREJUDICE.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party

---

[4] Randall does not argue that the banks that provided the defendants with his financial information are CRAs. Regardless, when a bank "reports 'information based solely on its own experience with one of its customers, the [b]ank is not acting as a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act[.]'" *Daniels*, 39 F. App'x at 225 (quoting *Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir.1988)).

who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 17th day of August, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge